UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| CLAY HARRIS, on behalf of himself and a class of all others similarly situated,<br>45316 State Route 800,<br>Woodsfield, OH 43793,<br><br>         Plaintiff,<br>v.<br><br>WALMART INC.,<br>702 S.W. 8th Street,<br>Bentonville, Arkansas 72716,<br><br>         Defendant. | Civil Action No. 2:21-cv-5924<br><br>**CLASS ACTION COMPLAINT and**<br>**DEMAND FOR JURY TRIAL** |

Plaintiff Clay Harris ("Plaintiff") individually and on behalf of himself and all others similarly situated as defined as the "Class Members" in paragraphs 36 and 37 below, brings this class action lawsuit against Defendant Walmart Inc. ("Walmart" or "Defendant") based upon personal knowledge as to himself, the investigation of his counsel, and on information and belief as to all other matters.

**INTRODUCTION**

1. This is a class action lawsuit against Defendant regarding the manufacture, distribution, and sale of Equate spray-on antiperspirant products that contain benzene, a known human carcinogen (the "Affected Products").[1]

2. "Antiperspirant body spray products are considered over-the-counter drugs and certain deodorant body sprays are considered cosmetics that are regulated by the U.S. Food and Drug Administration ("FDA")."[2] The FDA has several safety and effectiveness regulations in

---

[1] Plaintiff reserves the right to amend this list if further investigation and/or discovery reveals that the list should be amended.
[2] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray*

1

place that govern the manufacture and marketing of all antiperspirant and deodorant products, including safety data on its ingredients.[3]

3. On November 3, 2021, Valisure, an independent pharmacy that analyzes the safety of consumer products, filed a citizen petition with the FDA detailing its findings that it detected high levels of benzene in many body spray products, including several of Defendant's Equate body spray antiperspirant products. Valisure called for the FDA to recall all batches of Defendant's body spray antiperspirant products that contained benzene on the basis that they are adulterated under Section 501 of the Federal Drug and Cosmetics Act ("FDCA") in violation of 21 U.S.C. § 351 and misbranded under Section 502 of the FDCA in violation of 21 U.S.C. § 352.

4. Benzene is a known human carcinogen. The World Health Organization ("WHO") and the International Agency for Research on Cancer ("IARC") have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[4] Similarly, the Department of Health and Human Services ("DHHS") has determined that benzene causes cancer in humans.[5] Benzene exposure has been linked with acute lymphocytic leukemia, chronic lymphocytic leukemia, multiple myeloma, and non-Hodgkin lymphoma.[6]

5. According to Valisure, because many of the products it tested did not contain detectable levels of benzene, it appears that benzene is not a requisite component of manufacturing

---

*Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited December 28, 2021); *See also* 21 C.F.R. § 352, *et seq.*
[3] *FDA Authority Over Cosmetics: How Cosmetics Are Not FDA-Approved, but Are FDA-Regulated*, U.S. FOOD & DRUG ADMINISTRATION, https://www.fda.gov/consumers/fda-authority-over-cosmetics-how-cosmetics-are-not-fda-approved-are-fda-regulated (last visited December 28, 2021).
[4] *IARC Monographs on the Identification of Carcinogenic Hazards to Humans: List of Classifications*, INTERNATIONAL AGENCY FOR RESEARCH ON CANCER, WORLD HEALTH ORGANIZATION, https://monographs.iarc.who.int/list-of-classifications (last visited December 28, 2021).
[5] *Facts About Benzene,* CENTERS FOR DISEASE CONTROL AND PREVENTION (April 4, 2018) https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited December 28, 2021).
[6] *Benzene and Cancer Risk*, AMERICAN CANCER SOCIETY https://www.cancer.org/cancer/cancer-causes/benzene.html (last visited December 28, 2021).

or packaging body sprays.[7]  As such, "any significant detection of benzene should be deemed unacceptable."[8]

6. David Light, Founder and Chief Executive Officer of Valisure stated that "[t]he presence of this known human carcinogen in body spray products regularly used by adults and adolescents in large volumes makes this finding especially troubling[.]"[9]

7. The presence of benzene in the Affected Products is not disclosed on the Affected Products' labels. Therefore, Plaintiff, by use of reasonable care, could not have discovered that the Affected Products were contaminated with benzene.

8. Plaintiff and Class Members purchased the Affected Products with the expectation that the products were safe, including free of carcinogens. Because Defendant sold products to consumers that contain dangerous levels of benzene, Plaintiff and the Class Members were deprived of the benefit of their bargain.

9. To prevent Defendant from selling misbranded, illegal, and dangerous products in the future, Plaintiff seeks injunctive relief including, but not limited to requiring Defendant to improve internal testing protocols and requiring independent testing of Defendant's products to ensure that its body spray products are free of benzene before they are sold.

10. Accordingly, Plaintiff brings this action on behalf of himself and the Class for equitable relief and to recover damages and restitution for: (i) breach of express warranty; (ii) violation of Ohio's Consumer Sales Protection Act, Ohio Rev. Code § 1345.01 *et seq.*; and (iii) unjust enrichment.

---

[7] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited December 28, 2021).
[8] *Id.*
[9] *Id.*

## PARTIES

11. Plaintiff is a resident and citizen of the state of Ohio. From 2015 through December of 2021, Plaintiff made numerous purchases of Equate aerosol antiperspirants. Plaintiff purchased the Affected Products from Walmart retail stores located in St. Clairsville, Ohio and Weirton, West Virginia. When purchasing the Affected Products, Plaintiff reviewed the accompanying labels and disclosures and understood them as representations and warranties by Defendant that the products were properly manufactured, free from defects, and safe for their intended use. Plaintiff relied on these representations and warranties in deciding to purchase the products and these representations and warranties were part of the basis of the bargain in that he would not have purchased the Affected Products from Defendant if he had known that they were not, in fact, properly manufactured, free from defects, or safe for their intended use.

12. Defendant is a Delaware corporation with its principal place of business and headquarters located at 702 S.W. 8th Street, Bentonville, Arkansas. Defendant conducts business throughout the United States, including in this District. Defendant created and/or authorized the false, misleading, and deceptive manufacturing, marketing, advertising, and distribution of the Affected Products.

## JURISDICTION AND VENUE

13. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) because there are more than 100 Class Members; the aggregate amount in controversy exceeds $5,000,000.00, exclusive of interest, fees, and costs; and at least one member of the class is a citizen of a state different than at least one Defendant.

14. This Court has personal jurisdiction over Defendant because Defendant regularly sells and markets its products in the state of Ohio. Defendant derives substantial revenue from

sales of its products in this State, with knowledge that its products are being marketed and sold for use in this State.

15. Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Plaintiff and many Class Members reside in the Southern District of Ohio, a substantial part of the conduct giving rise to Plaintiff's claims occurred in this District, and Defendant conducts substantial business in this District.

FACTUAL ALLEGATIONS

A. **The Dangers of Benzene**

16. According to the U.S. Centers for Disease Control and Prevention ("CDC"), the U.S. Department of Health and Human Services has determined that benzene causes cancer in humans. Similarly, the WHO and the IARC have classified benzene as a Group 1 compound thereby defining it as "carcinogenic to humans."[10]

17. The National Institute for Occupational Safety and Health ("NIOSH") and CDC identify "exposure routes" for benzene to include: "inhalation, skin absorption, ingestion, skin and/or eye contact."[11]

18. The NIOSH and CDC identify "target organs" associated with human exposure to benzene to include: "eyes, skin, respiratory system, blood, central nervous system, bone marrow.[12]

19. The CDC warns that "[b]enzene works by causing cells not to work correctly. For example, it can cause bone marrow not to produce enough red blood cells, which can lead to

---

[10] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited December 28, 2021).
[11] *NIOSH Pocket Guide to Chemical Hazards: Benzene*, CENTERS FOR DISEASE CONTROL AND PREVENTION, https://www.cdc.gov/niosh/npg/npgd0049.html (last visited December 28, 2021).
[12] *Id.*

anemia. Also, it can damage the immune system by changing blood levels of antibodies and causing the loss of white blood cells."[13]

20. As for "where benzene is found and how it is used," the CDC states that "[s]ome industries use benzene to make other chemicals that are used to make plastics, resins, and nylon and synthetic fibers. Benzene is also used to make some types of lubricants, rubbers, dyes, detergents, drugs, and pesticides."[14]

21. The CDC has stated that ways in which people "could be exposed to benzene" include:

- Outdoor air contains low levels of benzene from tobacco smoke, gas stations, motor vehicle exhaust, and industrial emissions.

- Indoor air generally contains levels of benzene higher than those in outdoor air. The benzene in indoor air comes from products that contain benzene such as glues, paints, furniture wax, and detergents.

- The air around hazardous waste sites or gas stations can contain higher levels of benzene than in other areas.

- Benzene leaks from underground storage tanks or from hazardous waste sites containing benzene can contaminate well water.

- People working in industries that make or use benzene may be exposed to the highest levels of it.

- A major source of benzene exposure is tobacco smoke.[15]

22. A 2010 study titled "Advances in Understanding Benzene Health Effects and Susceptibility" summarized the epidemiological studies of the carcinogenic effects of benzene exposure and an overview of the hematotoxic effects of benzene.[16] The 2010 study concluded:

---

[13] *Facts About Benzene,* CENTERS FOR DISEASE CONTROL AND PREVENTION (April 4, 2018) https://emergency.cdc.gov/agent/benzene/basics/facts.asp (last visited December 28, 2021).
[14] *Id.*
[15] *Id.*
[16] Martyn T. Smith, *Advances in Understanding Benzene Health Effects and Susceptibility*, ANNUAL REVIEWS, Vol. 31:133-148 (April 21, 2010) https://www.annualreviews.org/doi/full/10.1146/annurev.publhealth.012809.103646

6

      a. There is probably no safe level of exposure to benzene, and all exposures constitute some risk in a linear, if not supralinear, and additive fashion.

      b. Exposure to benzene can lead to multiple alterations that contribute to the leukemogenic process, indicating a multimodal mechanism of action.

      c. Benzene is a ubiquitous chemical in our environment that causes acute leukemia and probably other hematological cancers.

23. The FDA currently recognizes the danger of benzene and, as a result, has claimed it should not be used in the manufacture of any component of a drug product due to its unacceptable toxicity effect.[17]

24. Where the use of benzene or other Class 1 solvents is *unavoidable*, the FDA has stated that the levels should be restricted, and benzene is restricted under such guidance to 2 parts per million ("ppm").[18]

25. Because many of the products Valisure tested did not contain detectable levels of benzene, it does not appear that benzene use is unavoidable for their manufacture.[19]  As such, "[a]ny significant detection of benzene should be deemed unacceptable."[20]

26. The FDA regulates antiperspirants to ensure that they meet safety and effectiveness standards. See 21 CFR §§ 350.1.  The FDA has also identified acceptable active ingredients for products labeled as antiperspirant.  Benzene is not one of those acceptable ingredients.

---

(last visited December 28, 2021).
[17] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited December 28, 2021).
[18] *Id.*
[19] David Light, Kaury Kucera, PhD, and Quian Wu, PhD, *Valisure Citizen Petition on Benzene in Body Spray Products* (November 3, 2021), https://www.valisure.com/wp-content/uploads/Valisure-FDA-Citizen-Petition-on-Body-Spray-v4.0-1.pdf (last visited December 28, 2021).
[20] *Id.*

27. As such, the presence of this known human carcinogen in body spray products widely used by adults and children in large volumes makes the presence of benzene in body spray products especially troubling.

**B.**  **The Valisure Lab Report Identified High Levels of Benzene In Defendant's Products**

28. Valisure analyzed 108 unique batches from 30 brands of deodorant and antiperspirant aerosol products.

29. Valisure identified twenty-four body spray products or product line batches which contained levels of benzene at 2 ppm or higher, including the Affected Products:

| Brand | UPC | Lot | Expiration | Type | Description | API | Percent API | Average ppm | % St Dev |
|---|---|---|---|---|---|---|---|---|---|
| Old Spice | 012044001912 | 11671458SQ | 06/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 17.7 | 12% |
| Old Spice | 012044001912 | 11671458SB | 06/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 17.4 14.1* | 8% |
| Secret | 037000711087 | 11721458SG | 06/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 16.2 13.1* | 17% |
| Secret | 037000711087 | 11701458SH | 06/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 16.1 | 16% |
| Tag | 850007395421 | M 21075 | Unknown | Deodorant | Midnight, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 14.1 | 28% |
| Secret | 037000711094 | 12181458SD | 08/2023 | Antiperspirant | Powder Fresh, 24 HR Aerosol | Aluminum Chlorohydrate (Anhydrous) | 24 | 12.5 | 12% |
| Sure | 883484002278 | (L)21175 | 05/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 11.1 6.41* | 14% |
| Equate | 681131346443 | 1E05 | 05/2023 | Antiperspirant | Dry Spray, Cucumber | Aluminum Chlorohydrate | 20.2 | 6.15 3.21* | 5% |
| Old Spice | 037000695707 | 246144504 | Unknown | Deodorant | Below Deck, Powder Spray, Feel Drier & Cleaner, Down Below, Fresh Air | N/A (Cosmetic Product) | N/A | 5.22 6.52* | 3% |
| Suave | 079400751508 | 07151AD14 | 07/2023 | Antiperspirant | 24 Hour Protection, Powder, Aerosol | Aluminum Chlorohydrate | 19.1 | 5.21 | 4% |

8

| Brand | UPC | Lot | Expiration | Type | Description | Active Ingredient | | | |
|---|---|---|---|---|---|---|---|---|---|
| Right Guard | 017000068060 | Q405410200 | Unknown | Antiperspirant | Sport, Fresh, Up To 48 HR Odor Protection | Aluminum Chlorohydrate | 20 | 5.00 5.07* | 10% |
| Secret | 037000798842 | 11091458SN | 04/2023 | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose | Aluminum Chlorohydrate (Anhydrous) | 23.5 | 4.85 | 6% |
| Old Spice | 037000730347 | 11001458SC | 04/2023 | Antiperspirant | Sweat Defense, Stronger Swagger, Dry Spray, Sweat & Odor Protection | Aluminum Chlorohydrate | 23.5 | 4.54 | 24% |
| Brut | 827755070108 | (L)21155 | 05/2023 | Antiperspirant | Classic, 24 Hr Protection | Aluminum Chlorohydrate | 20.9 | 4.13 | 7% |
| Sure | 883484002278 | 21172 | 05/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 3.59 | 35% |
| Old Spice | 012044001912 | 12631458SB | 09/2023 | Antiperspirant | Pure Sport | Aluminum Chlorohydrate (Anhydrous) | 23 | 3.34 | 16% |
| Right Guard | 017000068060 | Q610900732 | Unknown | Antiperspirant | Sport, Fresh, Up To 48 HR Odor Protection | Aluminum Chlorohydrate | 20 | 2.61 | 16% |
| Secret | 037000798842 | 11991458SR | 07/2023 | Antiperspirant | Cool Light & Airy Smooth Feel, Dry Spray, 48 Hour Freshness, Rose | Aluminum Chlorohydrate (Anhydrous) | 23.5 | 2.58 | 20% |
| Tag | 854152008786 | 0252020203 | Unknown | Deodorant | Sport, Fearless, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 2.53 | 46% |
| Sure | 883484002278 | (L)21099 | 03/2023 | Antiperspirant | Lasts All Day, Unscented, Aerosol | Aluminum Chlorohydrate (Anhydrous) | 10 | 2.36 | 9% |
| Brut | 827755070085 | (L)21167 | 05/2023 | Antiperspirant | Classic, 24 Hr Protection | Aluminum Chlorohydrate | 20.9 | 2.34 2.47* | 4% |
| Tag | 854152008762 | 0252035602 | Unknown | Deodorant | Sport, Dominate, Fine Fragrance Body Spray, Long Lasting Scent | N/A (Cosmetic Product) | N/A | 2.30 | 36% |
| Suave | 079400785503 | 08091AD00 | 08/2023 | Antiperspirant | 24 Hour Protection, Fresh, Aerosol | Aluminum Chlorohydrate | 19.1 | 2.30 2.11* | 9% |
| Suave | 079400785503 | 08091AD02 | 08/2023 | Antiperspirant | 24 Hour Protection, Fresh, Aerosol | Aluminum Chlorohydrate | 19.1 | 2.24 | 6% |

30. The *lowest* level of benzene found in Defendant's product listed in the chart above is 3.21 ppm (Equate, Antiperspirant Dry Spray, Cucumber), or 60.5% higher than the 2 ppm concentration limit for "unavoidable" uses.

31. The *highest* level of benzene found in Defendant's products listed in the chart above is 6.15 ppm (Equate, Antiperspirant Dry Spray, Cucumber), or more than 3 times the concentration limit for "unavoidable" uses.

32. The presence of benzene in the Affected Products is not disclosed on the Affected Products' labels. Therefore, Plaintiff, by use of reasonable care, could not have discovered that the Affected Products were contaminated with Benzene.

33. By marketing and selling its body spray products in the stream of commerce with the intent that its Affected Products would be purchased by Plaintiff and the Class Members,

9

Defendant warrants that the Affected Products are safe to use rather than adulterated body sprays containing a dangerous, cancer-causing chemical.

C. **Defendant's False and Misleading Advertising Campaign**

34. Benzene is not listed on the Affected Product labels as either an active or inactive ingredient, nor is there any warning about the inclusion (or even potential inclusion) of benzene in the Affected Products. Below is a screenshot from Defendant's website.



35. As such, Defendant's advertising campaigns are false and misleading. The presence of benzene in the Affected Products renders the Affected Products illegal and unfit for sale in trade or commerce. Plaintiff would not have purchased the Affected Products had they been truthfully and accurately labeled.

## CLASS ACTION ALLEGATIONS

36. Plaintiff brings this action pursuant to Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following Classes:

> All persons who purchased one or more of Defendant's Affected Products in the United States for personal/household use within any applicable limitations period (the "Nationwide Class").

37. Plaintiff brings this action individually and on behalf of the following Ohio subclass:

> All persons who purchased one or more of Defendant's Affected Products in the

state of Ohio for personal/household use within any applicable limitations (the "Ohio Subclass").

38. Excluded from the Class and Subclass are: (1) any Judge or Magistrate presiding over this action and any members of their families; (2) Defendant, Defendant's subsidiaries, parents, successors, predecessors, and any entities in which Defendant or its parents and any entities in which Defendant has a controlling interest and its current or former employees, officers, and directors; and (3) individuals who allege personal bodily injury resulting from the use of Affected Products.

39. **Numerosity (Rule 23(a)(1)):** The exact number of Class Members is unknown and currently unavailable to Plaintiff, but joinder of individual members herein is impractical. The Class is likely comprised of thousands of consumers. The precise number of Class Members, and their addresses, is unknown to Plaintiff at this time, but can be ascertained from Defendant's records and/or retailer records. The Class Members may be notified of the pendency of this action by mail or email, Internet postings and/or publications, and supplemented (if deemed necessary or appropriate by the Court) by published notice.

40. **Predominant Common Questions (Rule 23(a)(2) and (b)(3)):** The Class's claims present common questions of law and fact, and those questions predominate over any questions that may affect individual Class Members. The common and legal questions include, but are not limited to, the following:

    a. Whether the Affected Products contain benzene;

    b. Whether Defendant knew or should have known that the Affected Products contain benzene;

    c. Whether Defendant's representations and omissions, in its marketing, advertising, labeling, and packaging of the Affected Products, are

11

misleading;

d. Whether Defendant's representations and omissions, in its marketing, advertising, labeling, and packaging of the Affected Products are reasonably likely to deceive;

e. Whether Defendant engaged in false and misleading advertising;

f. Whether Defendant had knowledge that those representations were false, deceptive, and/or misleading;

g. Whether Defendant's internal testing showed that its products contained benzene;

h. Whether Defendant violated the state consumer protection statutes alleged herein;

i. Whether Defendant breached its express warranties;

j. Whether Defendant was unjustly enriched;

k. Whether Defendant has the capability to implement changes to processes, practices, and policies regarding testing its products for contaminants, including, but not limited to benzene; and

l. The nature of relief, including damages and equitable relief, to which Plaintiff and Class Members are entitled.

41. **Typicality of Claims (Rule 23(a)(3)):** Plaintiff's claims are typical of the claims of the Class because Plaintiff, like all other Class Members, purchased the Affected Products, suffered damages as a result of that purchase, and seeks the same relief as the proposed Class Members.

42. **Adequacy of Representation (Rule 23(a)(4)):** Plaintiff adequately represents the

Class because his interests do not conflict with the interests of the Class Members, and he has retained counsel competent and experienced in complex class action and consumer litigation. Plaintiff and his counsel will fairly and adequately protect the interest of the Class Members.

43. **Superiority (Rule 23(b)(3)):** A class action is superior to other available means of adjudication for this controversy. It would be impracticable for Class Members to individually litigate their own claims against Defendant because the damages suffered by Plaintiff and the Class Members are relatively small compared to the cost of individually litigating their claims. Individual litigation would create the potential for inconsistent judgments and delay and expenses to the court system. A class action provides an efficient means for adjudication with fewer management difficulties and comprehensive supervision by a single court.

44. **Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)):** In the alternative, this action may properly be maintained as a class action because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudication with respect to individual Class Members, which would establish incompatible standards of conduct for the Defendant; or the prosecution of separate actions by individual Class Members would create a risk of adjudications with respect to individual Class Members which would, as a practical matter, be dispositive of the interests of other Class Members not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or Defendant has acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

## CAUSES OF ACTION

## COUNT I

**BREACH OF EXPRESS WARRANTY**
**(On behalf of Plaintiff and the Class (or alternatively, the Ohio Subclass) against Defendant)**

45. Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

46. Defendant marketed and sold its body spray products in the stream of commerce with the intent that its Affected Products would be purchased by Plaintiff and the Classes.

47. In connection with the sale of the Affected Products, Defendant, as the designer, manufacturer, marketer, distributor, and/or seller issued written warranties by representing that the Affected Products were body sprays that contained only those active and inactive ingredients listed on the Products' labels. Those active and inactive ingredients do not include benzene, a known human carcinogen. Defendant further expressly warranted that the Affected Products are body spray antiperspirant products, rather than adulterated body sprays containing dangerous chemicals.

48. The representations, as set forth above, contained or constituted affirmations of fact or promises made by the seller to the buyer which related to the goods and became part of the basis of the bargain creating an express warranty that the goods shall conform to the affirmations of fact or promises.

49. Plaintiff, by use of reasonable care, could not have discovered the breached warranty and realized the hidden increased risks and unreasonable dangers of using the Affected Products.

50. As a direct and proximate cause of Defendant's breach of express warranty, Plaintiff and the Class Members have been injured and harmed because they would not have purchased the products had they known the true facts regarding the benzene content.

51. On December 14, 2021, prior to filing this action, Defendant was served with a pre-suit notice letter pursuant to U.C.C. §§ 2-313 and 2-607.

## COUNT II

### OHIO'S CONSUMER SALES PROTECTION ACT
### Ohio Revised Code § 1345.01, *et seq.*
### (On behalf of Plaintiff and the Ohio Subclass against Defendant)

52. Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

53. Plaintiff brings this count on behalf of himself and all Class Members who purchased an Affected Product in Ohio.

54. Plaintiff and Ohio Subclass members are "consumers," as defined by ORC Ann. § 1345.01(D).

55. At all times mentioned herein, Defendant engaged in a "consumer transaction" in Ohio, as defined in R.C. § 1345.01(A).

56. Defendant has committed and continues to commit unfair and deceptive acts or practices in connection with a consumer transaction in violation of the Ohio Consumer Sales Practices Act, R.C. § 1345.01, *et seq.*, (the "OCSPA"), namely the sale of the Affected Products to consumers in Ohio while making false and misleading statements concerning the content of the Affected Products.

57. The practice of making misrepresentations and material omissions regarding a consumer product has been previously determined to be deceptive or unconscionable under the OCSPA.[21]

---

[21] Pursuant to Ohio Rev. Code Ann. § 1345.09(B), Defendant's alleged acts must have been previously declared to be deceptive or unconscionable under Ohio Rev. Code Ann. §§ 1345.02 or 1345.03. Defendant systematically made misrepresentations and material omissions regarding the Affected Products. Ohio courts have previously declared actions similar to that of the Defendant to be deceptive or unconscionable. See, e.g., Arales v. Furs by Weiss, Inc., No. 81603, 2003 WL 21469131, at *1-4 (Ohio Ct. App. June 26, 2003) (retailer's omission to consumer was unfair or deceptive).

58. Defendant has unfairly and deceptively omitted and concealed material information related to the Affected Products from consumers in violation of the OCSPA.

59. Defendant's unfair and deceptive practices deceived Plaintiff and the Ohio Subclass and deceived a substantial segment of the target audience.

60. Defendant's unfair and deceptive practices were material as it influenced purchasing and payment decisions.

61. Plaintiff and the Ohio Subclass have been damaged as a direct and proximate result of Defendant's deceptive and unfair practices.

62. Defendant's conduct outlined herein violates the OCSPA.

63. Plaintiff and the Ohio Subclass are entitled to recover compensatory damages, plus interest, attorneys' fees, and costs.

64. Defendant's conduct was intentional, willful, wanton, malicious, and egregious, entitling Plaintiff and members of the Ohio Subclass to punitive damages and attorneys' fees in an amount to be determined at trial.

## COUNT III

**UNJUST ENRICHMENT**
**(On behalf of the Plaintiff and the Class (or alternatively, the Ohio Subclass) against Defendant)**

65. Plaintiff hereby incorporates all other paragraphs of this Complaint and restates them as if fully set forth herein.

66. Plaintiff and Class Members conferred benefits upon Defendant. Plaintiff and Class Members paid money for Defendant's worthless and defective Affected Products.

67. Defendant has unjustly retained the benefits conferred upon it by Plaintiff and Class Members.

68. Defendant retained those benefits under circumstances that make it inequitable for Defendant to retain such benefits. Specifically, Defendant retained those benefits even though Defendant's Affected Products contain benzene and are unfit and unsafe for human use. If Plaintiff and Class Members had known the true nature of Defendant's Affected Products, they would not have purchased the products. Plaintiff and Class Members are therefore entitled to disgorgement and/or restitution as prayed for hereunder.

69. Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiff and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiff and Class Members for its unjust enrichment, as ordered by the Court.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, on behalf of himself and the proposed Classes, prays for relief and judgment against Defendant as follows:

a. Certifying the Classes pursuant to Rule 23 of the Federal Rules of Civil Procedure, appointing Plaintiff as representative of the Class, and designating Plaintiff's counsel as Class Counsel;

b. Awarding Plaintiff and the Classes compensatory damages, in an amount exceeding $5,000,000, to be determined by proof;

c. Awarding Plaintiff and the Classes appropriate relief, including but not limited to actual damages;

d. For declaratory and equitable relief, including restitution and disgorgement;

e. For an order enjoining Defendant from continuing to engage in the wrongful acts and practices alleged herein;

f. Awarding Plaintiff and the Classes the costs of prosecuting this action, including expert witness fees;

g. Awarding Plaintiff and the Classes reasonable attorneys' fees and costs as allowable by law;

h. Awarding pre-judgment and post-judgment interest;

i. For punitive damages; and

j. Granting any other relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: December 29, 2021

Respectfully submitted,

/s/ James R. Cummins
James R. Cummins (0000861)
**CUMMINS LAW LLC**
Scripps Center
312 Walnut Street, Suite 1530
Cincinnati, Ohio 45202
Telephone: 513-721-9000
Facsimile: 513-721-9001
Email: jcummins@cumminslaw.us

**LEVI & KORSINSKY, LLP**
Mark S. Reich (*pro hac vice* to be filed)
Courtney E. Maccarone (*pro hac vice* to be filed)
55 Broadway, 10th Floor
New York, NY 10006
Telephone: 212-363-7500
Facsimile: 212-363-7171
Email: mreich@zlk.com
          cmaccarone@zlk.com

*Counsel for Plaintiff*